UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANNA MARIA COWDREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WHITNEY ALLEN, an individual, | ) | No.  05-CV-461-TCK-PJC |
| CHRISTOPHER STOUT, an individual, | ) | |
| ANTHONY CELLINO, an individual, and | ) | |
| THE CITY OF TULSA, a municipality, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 25).

### I.    Factual Background

At all relevant times, Plaintiff and the individual Defendants were employed as police officers by Defendant City of Tulsa.  In the spring of 2003, an investigation was initiated regarding allegations of missing property and money from the Tulsa Police Department Property Room ("Property Room").[1]  During this time, Plaintiff was working on assignment in the Property Room. It was Plaintiff's responsibility to research property kept in the Property Room and determine whether it should be destroyed, returned to the owner, auctioned, or sent to the general fund (in the case of cash).  Defendant Whitney Allen was a sergeant over the Property Room, Defendant Anthony Cellino was a sergeant in charge of the Fraud Forgery Unit, and Defendant Christopher Stout was a detective corporal under Cellino's supervision.

The investigation was led by Defendants Cellino and Stout.  Defendant Stout prepared two

---

[1]  The Property Room is the holding location for property and cash belonging to victims of crimes.

1

Supplemental Reports, outlining the progress of the investigation ("May 27, 2003 Supplemental Report" and "August 12, 2003 Supplemental Report"). (Ex. A to Defs.' Mot. for Summ. J. at 10-19 and 49-54.)  These Supplemental Reports were provided to the District Attorney along with the investigation file.  (Ex. A to Defs.' Mot. for Summ. J. at 1.)  As detailed in the May 27, 2003 Supplemental Report, Defendant Cellino interviewed all Property Room personnel, including Plaintiff, at the outset of the investigation.  It was determined during Plaintiff's interview that Plaintiff was unable to timely pay her monthly house payments and was consistently receiving late notices for such payments. Sara Vas, Plaintiff's former roommate, was also interviewed.  Vas stated Plaintiff suffered from an alcohol problem and that she observed a sealed box in Plaintiff's bedroom, which had a property receipt number written on the outside of the box.

During the investigation, various pieces of evidence were analyzed.  This evidence included envelopes found in the trash, which were associated with the missing property.  The envelopes were submitted to Tulsa Police Lab Latent Prints Examiner Robert Yerton with a lab request for examination.  According to the May 27, 2003 Supplemental Report, Yerton contacted Defendant Cellino on April 26, 2003 and informed Cellino that he was able to lift prints from one of the envelopes.  As stated in the Report, Yerton "advised he was able to eliminate all property room personnel as suspects except Officer Anna Cowdrey.  He advised that the fingerprints on file for Officer Cowdrey were of poor quality and he would need better prints to complete his examination." (Ex. A to Defs.' Mot. for Summ. J. at 16.)  Stout's report then states that on April 29, 2003, after procuring new prints from Plaintiff, Yerton contacted Defendant Cellino " and stated the fingerprint examination of [Plaintiff's] prints and the prints found on the envelopes were inconclusive."  *Id.* Finally, Stout's report indicates that on May 8, 2003,  Stout received Yerton's supplemental report,

which "stated that the latent prints lifted from the evidence . . . have been compared with **negative results** to the known fingerprints of the property room personnel." (Ex. A to Defs.' Mot. for Summ. J. at 18 (emphasis in original).)

Investigators also conducted a handwriting analysis in order to determine the source of the handwriting found on various property receipts associated with missing property. (Ex. A to Defs.' Mot. for Summ. J. at 16.) For example, on one such receipt, the letters "RO" were written, indicating that the property had been "returned to owner." However, the money associated with that receipt had not been signed out by the owner as required, and the envelope containing the money was recovered from the property room trash. Another receipt included a handwritten notation indicating that the property had been forfeited. There was no record of forfeiture for the property associated with the receipt, however. It was determined that the handwriting on these property receipts belonged to Plaintiff.[2]

Finally, as outlined in the August 12, 2003 Supplemental Report, Plaintiff's computer log entries were recovered on July 28, 2003. These entries illustrated that Plaintiff had recently viewed the receipts of missing property. These entries further reflected that Plaintiff had viewed such receipts in the "DPROP" screen, which was used in order to delete property from the system.

A criminal Information was filed in Tulsa County District Court on August 15, 2003 (Case No. CF-2003-3792), charging Plaintiff with embezzlement in conjunction with the missing money and property. Specifically, the Information charged Plaintiff with one felony count of embezzlement

---

[2] The May 27, 2003 and August 12, 2003 Supplemental Reports include numerous other examples of property receipts exhibiting handwritten notations by Plaintiff, in which the property was not distributed in the manner described by the handwritten notation. These are but two illustrative examples.

and four misdemeanor counts of embezzlement, alleging that she took money and a car stereo from the Property Room.  Plaintiff pled "not-guilty" to the charges, and a preliminary hearing was held on November 6, 2003 before the Honorable Clancy Smith, Special Judge of Tulsa County District Court.  (Ex. C to Defs.' Mot. for Summ. J.)  After hearing evidence, Judge Smith found "probable cause to believe that this defendant committed [embezzlement]."  (Ex. C to Defs.' Mot. for Summ. J. at 151.)  Judge Smith placed particular emphasis on the fact that Plaintiff's handwriting was found on the property receipts of the missing property.  (Ex. C to Defs.' Mot. for Summ. J. at 151.)  A jury trial was held on March 9, 2003 before the Honorable Linda Morrissey.  At the close of the State's evidence, Judge Morrissey granted Plaintiff's demurrer, dismissing the case.[3]

Thereafter, Plaintiff brought suit against Defendants, alleging the following claims: (1) malicious prosecution; (2) abuse of process; (3) civil action for deprivation of rights pursuant to 42 U.S.C. § 1983; (4) personal rights and malicious wrong pursuant to OKLA. STAT. tit. 76, § 6; (5) intentional infliction of emotional distress; (6) negligent hiring, supervision, and retention; (7) tortious interference with employment; and (8) intentional misconduct causing harm.  Defendants have moved for summary judgment on all of Plaintiff's claims.

## II.    Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite*

---

[3] Neither party provided the transcript of the March 9, 2003 proceeding as an exhibit to the summary judgment briefing.  Nor did either party provide any detail as to Judge Morrissey's dismissal of the State's case.  Accordingly, the Court is without knowledge as to the particular findings made by Judge Morrissey on March 9, 2003.

*Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.* (citation omitted).  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

### III.     Malicious Prosecution Claim

In order to succeed on her claim for malicious prosecution, Plaintiff must meet the following five elements: (1) Defendants' filing a former action; (2) its successful termination in favor of Plaintiff; (3) Defendants' want of probable cause for pressing the former action against Plaintiff; (4) the presence of malice in Defendants' conduct; and (5) damages.  *Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 903 (Okla. 2006).  Malicious prosecution actions are disfavored by Oklahoma courts, and the elements of the action are narrowly construed.  *Meyers v. Ideal Basic Indus., Inc.*, 940 F.2d 1379, 1383 (10th Cir. 1991) (citing *Glasgow v. Fox*, 757 P.2d 836, 838-39 (Okla. 1988)).  The Court finds Plaintiff is unable to make a prima facie case of malicious prosecution because she cannot meet the third and fourth elements of the claim.

#### A.     Probable Cause

For purposes of a malicious prosecution claim under Oklahoma law, existence of probable cause constitutes a complete defense and is determined in light of the facts existing at time the underlying action was filed.  *Meyers*, 940 F.2d at 1383 (citing *Tulsa Radiology Assocs., Inc. v. Hickman*, 683 P.2d 537, 539 (Okla. Ct. App. 1984)).  As a matter of law, Judge Smith's finding of probable cause at the November 6, 2003 preliminary hearing negates Plaintiff's ability to meet the third element of her malicious prosecution claim, mandating dismissal of same.  *See Greenberg v.*

*Wolfberg,* 890 P.2d 895, 902 n.25 (Okla. 1994) ("Our jurisprudence recognizes that probable cause is a complete defense to a malicious-prosecution claim.  To allow recovery for a suit brought upon probable cause would undermine this rule of law."); *James v. Sw. Ins. Co.*, 354 P.2d 408, 412 (Okla. 1960) ("But even if the issue of probable cause in a malicious prosecution action had been present, the fact that upon preliminary hearing plaintiff was bound over for trial in the district court showed probable cause."); *Adamson v. Dayton Hudson Corp.*, 774 P.2d 478, 480 (Okla. Ct. App. 1989) (holding plaintiff's false arrest claim, wherein plaintiff had the burden of proving lack of probable cause, was precluded by finding of probable cause at plaintiff's preliminary hearing).

Plaintiff attempts to revive the issue of probable cause by arguing that "a finding of probable cause at preliminary hearing does not preclude liability when the investigators and policy makers fabricated inculpatory evidence and concealed and/or misrepresented exculpatory evidence to obtain a charge by district attorney and finding of probable cause by preliminary court judge."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 16.)  Plaintiff relies heavily on *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004).  Therein, the Tenth Circuit determined that in order to overcome an initial finding of probable cause in the underlying action of plaintiff's malicious prosecution claim, plaintiff "bears the **heavy burden** of showing that [defendant's] falsification of inculpatory evidence or suppression of exculpatory evidence was necessary to the finding of probable cause [and that] without the falsified inculpatory evidence, or with the withheld exculpatory evidence, there would have been no probable cause for [plaintiff's] . . . prosecution."  *Pierce*, 359 F.2d at 1295 (emphasis added). The Court finds that Plaintiff has failed to meet the "heavy burden" necessary to meet the third element of her malicious prosecution claim.  *Id.*

Plaintiff claims that Defendants "knowingly and intentionally, or with reckless disregard for

6

the truth, fabricated and misrepresented" certain evidence, including: (1) fingerprint results; (2) the existence of a "yellow Post-It Note," which displayed her computer password; (3) the fact that "suspects to the crime were leading the investigation"; (4) the complete copy of the inventory list; (5) the lost Property Room keys; and (6) the condition of the Property Room.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 19.)  As a general matter, the Court agrees with Defendants that "the evidence cited [by Plaintiff as allegedly fabricated or misrepresented by Defendants] was either disclosed or not material to the finding of probable cause."  (Defs.' Reply Br. at 1.)

Although Plaintiff makes much of the fact that the Supplemental Report first states the fingerprint examination results were "inconclusive," arguing that Defendants were attempting to hide the "negative" fingerprint results, the record reflects that the results of the fingerprint testing are accurately included in the May 27, 2003 Supplemental Report.  Specifically, the May 27, 2003 Supplemental Report explicitly acknowledges that Yerton found "that the latent prints lifted from the evidence submitted to him have been compared with **negative results** to the known fingerprints of the property room personnel."  (Ex. A to Defs.' Mot. for Summ. J. at 18.)  Further, the actual report drafted by Yerton, which states "[t]he above latent prints have been compared with **negative results** to the known fingerprints of Sgt. W. Allen, Cpl. T. Clark, Ofc. S. Wanzer and Ofc. A. Cowdrey," was provided to the District Attorney along with the investigation file.  (Ex. A to Defs.' Mot. for Summ. J. at 1 and 36 (emphasis added).)  Given Defendants' disclosure of this evidence to the District Attorney, the Court cannot find that Defendants "suppress[ed] . . . exculpatory evidence" with regard to the fingerprint results, so as to mislead Judge Smith in her probable cause determination.  *See Pierce*, 359 F.2d at 1295.

The Court further finds the Post-It Note of little material value to Judge Smith's finding of

probable cause.  Plaintiff contends that attached to her computer was a Post-It Note containing her computer password, resulting in the possibility that another individual logged on to the computer and viewed the property receipts of the missing property.  There is no evidence, however, other than Plaintiff's self-serving affidavit, that such a Post-It Note existed.  *See Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004) (noting that a  nonmovant's self-serving affidavit, without other supporting evidence, is insufficient to create an issue of fact in order to survive summary judgment).  Further, the Court finds that the issue raised by the Post-It Note—namely, the possibility that other individuals used Plaintiff's computer—was presented at the preliminary hearing.  (Ex. C to Defs.' Mot. for Summ. J. at 85-87 (testimony that Plaintiff would leave her computer on and that other individuals would sometimes use the computer); *Id.* at 150 (Judge Smith's statement that Plaintiff argued that "a lot of people had access to [Plaintiff's computer]").)  Judge Smith therefore made her probable cause determination after considering such evidence, rendering improper a finding by this Court that Defendants fraudulently withheld this evidence in such a manner as to affect Judge Smith's probable cause ruling.  *See Pierce*, 359 F.2d at 1295.

Plaintiff's allegation that the investigation was tainted by the involvement of individuals who were initially considered suspects because of their proximity to the Property Room is also immaterial to the finding of probable cause, as there is no evidence that such involvement in any way affected the findings or results of the investigation.  Further, the two Supplemental Reports prepared by Defendant Stout clearly reflect that such individuals, including Defendant Allen, assisted in locating evidence for the investigation.  There is insufficient evidence for the Court to conclude that such involvement was "withheld" by Defendants.

The Court concludes that the remaining "withheld evidence" cited by Plaintiff is of

8

questionable material value and would not have affected the probable cause ruling of Judge Smith. There is simply no evidence in the record to sustain such a contention.  In fact, a reading of the preliminary hearing transcript illustrates that Judge Smith placed heavy weight on Plaintiff's handwriting, which was found on the property slips of the missing property.  None of the alleged "withheld evidence" had any bearing on the handwriting evidence, making it unlikely that such evidence would have altered Judge Smith's determination at the preliminary hearing.  The Court finds that Plaintiff is unable to meet the third element of her malicious prosecution claim.

### B.    Malice

Even if Plaintiff could meet the probable cause element of her claim, Plaintiff is unable to demonstrate "the presence of malice in Defendants' conduct," rendering dismissal of Plaintiff's malicious prosecution claim proper.  The Oklahoma Supreme Court has explained that in a malicious prosecution claim, "malice" is meant "an unreasonable and wrongful act done intentionally, without just cause or excuse."  *Park v. Security Bank & Trust Co.*, 512 P.2d 113, 119 (Okla. 1973) (citing *Imo Oil & Gas Co. v. Knox*, 6 P.2d 1062, 1064 (Okla. 1931)).  Express malice, "i.e. actual ill feeling toward the person injured, may also be proved to exist . . . [and] [w]hen so established, it forms a basis for exemplary damages . . . ."  *Park*, 512 P.2d at 119 (citing *Imo Oil*, 6 P.2d at 1064).

The Court has carefully reviewed the record and finds that no evidence of implied or express malice exists.  Rather, a reading of the parties' exhibits indicates that Defendants, along with other police officers involved in the investigation, executed the Property Room investigation without any sort of malice, express or implied, directed toward Plaintiff.  While she was admittedly the key suspect in the case, there is nothing in the record indicating that the investigation's focus on Plaintiff

was due to either "an unreasonable and wrongful act done intentionally, without just cause or excuse" or "ill feeling" toward Plaintiff.  *See Park*, 512 P.2d at 119.  Plaintiff's role as suspect can instead be attributed to the various pieces of evidence uncovered by Defendants, including the property slips with Plaintiff's handwriting, the reports from Plaintiff's roommate that Plaintiff possessed a box with a property slip in her home, Plaintiff's financial difficulties, and Plaintiff's computer log entries, showing that Plaintiff recently viewed property receipts of missing property items.  Given the existence of such evidence, and the absence of an unreasonable or wrongful act, the case brought against Plaintiff was simply not "malicious" in nature, but was instead the result of a lawful investigation.  *See Shaw v. Cross*, 201 P. 811, 812 (Okla. 1921) ("In contemplation of law, there can be no malice or conspiracy where the thing to be done is lawful and the means employed in doing the thing are also lawful.") (internal citations omitted).

 Accordingly, because the Court finds Plaintiff is unable to "set forth specific facts showing that there is a genuine issue for trial" as to the lack of probable cause and as to the presence of malice in Defendants' conduct, her claim for malicious prosecution must fail.  FED. R. CIV. P. 56(e).

## IV.    Abuse of Process Claim

Under Oklahoma law, the elements of abuse of process are: (1) improper use of the court's process; (2) primarily for an ulterior or improper purpose; (3) with resulting damage to the plaintiff asserting the misuse.  *Greenberg*, 890 P.2d at 905.  Abuse of process must not be confused with malicious prosecution:  "[M]alicious prosecution must be distinguished from abuse of process - the former lies for malicious *initiation* of process and the latter for a *perversion* of the process *after* it is issued."  *Id.* at 906.  Due to these differences, "[c]ourts have also required the plaintiff [in an abuse of process case] to prove 'a willful act in the use of process not proper in the regular conduct

of the proceeding.'" *Advantor Capital Corp. v. Yeary*, 136 F.3d 1259, 1264 (10th Cir. 1998) (citing

*Meyers*, 940 F.2d at 1382).[4]  In other words, although a plaintiff in a predicate action may have been

motivated by bad intention, there is no abuse if the court's process is used legitimately to its

authorized conclusion.  *Greenberg*, 890 P.2d at 905.

Plaintiff's abuse of process claim rests on the allegation that Defendants "instituted the

criminal proceeding against [Plaintiff] and perverted the process after the information was filed and

up to and including the Preliminary Hearing based on the facts as alleged above." (Am. Compl. ¶

22.)  Plaintiff has not set forth "specific facts showing that there is a genuine issue for trial" as to

her abuse of process claim.  FED. R. CIV. P. 56(e).  Specifically, Plaintiff has not provided any

argument or evidence demonstrating an "ulterior purpose" surrounding the Property Room

investigation or a "willful act in the use of process not proper in the regular conduct of the

proceeding."  *Advantor*, 136 F.3d at 1264.  Plaintiff instead focuses her argument on the

involvement of Defendant Allen in the investigation, alleging that because Defendant Allen, like

other employees of the Property Room, was initially considered a suspect, Defendant Allen's

---

[4]  There are inconsistencies in Oklahoma case law regarding whether the "willful act not
proper in the regular conduct of the proceeding" requirement is an enumerated element of an
abuse of process claim. *Compare Greenberg*, 890 P.2d at 905 (Okla. 1994) *with Tulsa
Radiology Assocs. Inc.*, 683 P.2d at 539.  Regardless of whether it is treated as an enumerated
element or as part of the first element of "improper use" of the court's process, however, the
Tenth Circuit has clearly interpreted Oklahoma law to require a showing of a willful act or threat
other than the mere filing of suit.  *See Advantor*, 136 F.3d at 1264 ("Courts which have
dismissed abuse of process claims have often done so because plaintiff has failed to prove an
improper 'willful act' in the use of legal process."); *Meyers*, 940 F.2d at 1382 ("To establish the
element of improper use of the process, it is clear that the plaintiff must show some definite act
or threat by the defendant not authorized by the process."); *see also Gore v. Taylor*, 792 P.2d
432, 435 (Okla. Ct. App. 1990) (setting forth detailed history of abuse of process claim under
Oklahoma law and concluding that there must be some definite act or threat not authorized by
the process).

subsequent involvement in the investigation so tainted the investigation as to make the ensuing prosecution against Plaintiff an "abuse of process." (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 20.) This allegation, standing alone, is simply not sufficient to withstand summary judgment, as there is no factual support that Defendant Allen's involvement in the investigation involved an "ulterior purpose or other willful or improper act." *See Big Five Cmty. Serv., Inc. v. Jack*, 782 P.2d 412, 414 (Okla. Ct. App. 1989) (affirming trial court's grant of summary judgment on abuse of process claim when there was "no admissible evidence in the record to show an ulterior purpose or other willful or improper act").

**V.     Section 1983 Claim**

Section 1983 imposes liability for conduct carried out under the color of state law which deprives a plaintiff of a constitutional or statutory right. 42 U.S.C. § 1983. To prevail on a civil claim for damages for a constitutional violation pursuant to § 1983, a plaintiff must establish that a defendant acted under color of state law and caused or contributed to the alleged constitutional violation. *Jenkins v. Wood*, 81 F.3d 988, 998 (10th Cir. 1996).

Plaintiff alleges Defendants violated her rights under the Fourth Amendment and her substantive due process rights by initiating and continuing a criminal prosecution without probable cause. (Am. Compl. § 25; Pl.'s Resp. to Defs.' Mot. for Summ J. at 25.) Although Plaintiff does not explicitly assert malicious prosecution as an underlying theory of her § 1983 claim, it appears from her allegations that such is the case. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996) (holding that a malicious prosecution claim is actionable under § 1983 as a violation of plaintiff's Fourth Amendment right to be free from unreasonable seizures). The common law elements of a malicious prosecution claim under state law provide a "starting point for the analysis,"

12

but the court must always decide "the ultimate question" of whether the plaintiff has also proved a constitutional violation.  *Id.*

As discussed in Section III, the Court has concluded that Plaintiff has not created a question of fact as to the issue of probable cause, which is necessary in order to survive summary judgment on Plaintiff's common law claim of malicious prosecution and on her § 1983 claim based on the same theory.  *See Pierce*, 359 F.3d at 1294 (assuming that the constitutional tort of malicious prosecution under § 1983 "requires an absence of probable cause"); *Taylor*, 82 F.3d at 1561 (an action for false arrest in the context of § 1983 is governed by Fourth Amendment standards premised upon the concept of probable cause).  Because the Court finds that Plaintiff is unable to demonstrate lack of probable cause, Plaintiff's § 1983 claim fails for the same reasons discussed in Section III.

## VI.   Personal Rights & Malicious Wrong Claim Pursuant to OKLA. STAT. tit. 76, § 6

Section 6 of Title 76 of the Oklahoma Statutes provides the following:

> Besides the personal rights mentioned or recognized by law, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations.

Plaintiff's Amended Complaint charges Defendants with violation of OKLA. STAT. tit. 76, § 6, claiming that the City of Tulsa, "through its policy makers and Allen, Stout and Cellino, individually and as representatives of City, acted improperly to insult, defame and harm Cowdrey."  (Am. Compl. ¶ 28.)  Plaintiff does not provide a great deal of factual detail supporting this allegation, however.  In fact, Plaintiff only identifies one specific statement which she alleges constitutes a violation of OKLA. STAT. tit. 76, § 6—that of Chief of Police Dave Been (who is not a Defendant in this case) in a Tulsa World article of August 16, 2003.  (Pl.'s Resp. to Defs.' Reply Br. on Defs'. Mot. for Summ. J. at 7.)  Specifically, Chief Been stated, "It's been a very extensive investigation . . . we feel

13

very strongly about the integrity of our department, and we're going to do everything we can to make sure that integrity is not damaged."  (Ex. EE to Pl.'s Resp. to Defs.' Mot. for Summ. J.)  As pointed out by Plaintiff, this statement was made after Plaintiff was charged with embezzlement.

*Wilson v. City of Tulsa*, 91 P.3d 673 (Okla. Ct. App. 2004), presents similar facts to those in the instant case.  In *Wilson*, the plaintiff was a police officer who had been terminated for theft.  Specifically, the plaintiff was accused of stealing $300 from an individual during an arrest.  The plaintiff was later reinstated after an arbitrator concluded that plaintiff's termination amounted to a contract violation.  Thereafter, the plaintiff sued the City of Tulsa and the City's former Chief of Police, Ron Palmer, for, *inter alia*, defamation arising out of a press release.  The press release, titled "Officer Terminated for Alleged Theft" stated that plaintiff was terminated for "issues regarding the alleged theft of money and truthfulness after the fact."  *Id.* at 680.

In affirming summary judgment against the plaintiff, the court held that as a public official,[5] the plaintiff "had to prove that the press release was published with 'actual malice (with knowledge that it was false or with reckless disregard of whether it was false.).'"  *Id.* at 680.  In finding the absence of such malice, the court reasoned that there was no evidence that the information "stated in the press release [was] not true."  *Id.*  The court also found that the press release was made in accordance with the "Chief's standard policy of communicating decisions regarding allegations of police wrongdoing to the press."  *Id.*  Accordingly, the court further found the press release

---

[5] Although the court in *Wilson* did not provide authority for its assumption that as a police officer, the plaintiff was a "public official," this statement of law is well established.  *See Revell v. Hoffman*, 309 F.3d 1228, 1232 (10th Cir. 2002) (stating "we have previously held that law- enforcement personnel are 'public officials' for First Amendment purposes") (citing to *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir. 1981) (stating "police officers have uniformly been treated as public officials within the meaning of New York Times.")).

privileged pursuant to OKLA. STAT. tit. 12, § 1443.1(A), which provides that statements made "in the proper discharge of an official duty" shall not be "punishable as libel." *Id.*

Similar to the court in *Wilson*, this court cannot find the proffered statement by Chief Been to constitute defamation.  Plaintiff does not provide any argument or authority for the proposition that Chief Been's statement regarding the "extensive investigation" was made with "actual malice." In fact, given that the statement does not even refer to Plaintiff directly, it is unclear whether the statement is truly defamatory—that is, whether Chief Been's statement "tends to so harm the reputation of [Plaintiff] as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [Plaintiff]." *Herbert v. Okla. Christian Coal.*, 992 P.2d 322, 327 n.4 (Okla. 1999).  Nevertheless, as in *Wilson*, there is no evidence that the information provided by Chief Been—namely, that the investigation was "extensive" and that the police department is concerned with its integrity—is false.  In fact, the investigation file reflects the "extensive" nature of the investigation, as it involved not only numerous interviews, but also fingerprint and handwriting analysis.   While Plaintiff might find fault with the conclusions drawn from the investigation, or with the specific methods employed therein, such fault has no relation to the "extensive" nature of the investigation.  Plaintiff has not created an issue of material fact with regard to whether Chief Been's statement was made with "actual malice."

Further, given Chief Been's position within the Tulsa Police Department, and his sworn affidavit stating that it is "his practice to inform the press when officers are being charged with a crime or disciplined for dishonesty in order to ensure prompt, accurate and proactive release of information," (Ex. C to Defs.' Reply Br.), Chief Been's statement with regard to the Property Room investigation falls within the purview of OKLA. STAT. tit. 12, § 1443.1(A).  Similar to the press

release in *Wilson*, Chief Been's statement was made "in the proper discharge of an official duty,"

and is therefore privileged.  *Wilson*, 91 P.3d at 680.  Accordingly, pursuant to the clear precedent

established in *Wilson*, there is insufficient evidence to support Plaintiff's claim under OKLA. STAT.

tit. 76, § 6.

**VII.    Intentional Infliction of Emotional Distress Claim**

Oklahoma recognizes intentional infliction of emotional distress as an independent tort.

*Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986).  In Oklahoma, to prove intentional infliction of

emotional distress, a plaintiff must meet the narrow standards of RESTATEMENT (SECOND) OF TORTS

§ 46, which provides in pertinent part:  "One who by extreme and outrageous conduct intentionally

or recklessly causes severe emotional distress to another is subject to liability for such emotional

distress, and if bodily harm to the other results from it, for such bodily harm."  Comment d to

RESTATEMENT (SECOND) OF TORTS § 46 provides:  "[L]iability has been found only where the

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Generally, the case is one in which the recitation of the facts to an average member of the

community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1376 (Okla. 1978) (citing RESTATEMENT (SECOND)

OF TORTS § 46).  It is the trial court's responsibility to act as gatekeeper—to determine first whether

the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to

sustain  a claim. *See Breeden*, 575 P.2d at 1377.  Likewise, it is for the court to determine first

whether, based upon the evidence presented, severe emotional distress can be found.  *See id.*

The precise basis for Plaintiff's intentional infliction of emotional distress claim is somewhat

unclear from the Amended Complaint and her briefing in response to Defendants' Motion for Summary Judgment.  In her response brief, for example, Plaintiff argues that "[a]s a result of Defendant's [sic] actions, allegations against [Plaintiff] was [sic] extensively covered in the media, she suffered depression and anxiety with physical manifestations: anxiety, crying spells, abdominal pain, heart burn, sleeping disturbance, fatigue, required medications and counseling."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 22.)  Although Plaintiff attaches records from the Psychological Services for the Tulsa Police & Fire Departments, illustrating that Plaintiff sought psychological assistance, Plaintiff does not provide any additional details regarding what specific "actions" of Defendants caused the alleged emotional distress.  Taking Plaintiff's Amended Complaint as a whole, the Court assumes that it is Defendants' actions in conjunction with the Property Room investigation which form the basis of Plaintiff's emotional distress claim.  These actions are insufficient to support a claim for intentional infliction of emotional distress, however.

First, there is no evidence in the record that Defendants' actions constituted "extreme and outrageous conduct," necessary for Plaintiff's claim to survive summary judgment.  Rather, although the actions taken by Defendants with regard to the investigation might not have been without fault, Defendants acted within the normal course of an investigation and did not exhibit any behavior which can be described as "extreme and outrageous."  Indeed, Oklahoma courts have granted summary judgment as to claims for intentional infliction of emotional distress when the actions complained of arose out of the course of a normal investigation.  *See Starr v. Pearle Vision*, 54 F.3d 1548, 1558-59 (10th Cir. 1995) (affirming district court's summary judgment on intentional infliction of emotional distress claim after finding acts taken in course of investigation of employee for embezzlement, including yelling at plaintiff, accusing her of theft, and pushing plaintiff, did not

constitute "extreme and outrageous" behavior) ("Oklahoma courts have allowed employers some latitude in investigating possible employee misconduct" when assessing intentional infliction of emotional distress claims arising out of such investigations); *Ishmael v. Andrew*, 137 P.3d 1271, 1276 (Okla. Ct. App. 2006) (finding statements made in course of an investigation, wherein investigator told plaintiff that he believed plaintiff was a liar, did not rise to the level of outrageous conduct necessary to support intentional infliction of emotional distress claim).

Second, Plaintiff has failed to point to any evidence which demonstrates a fact issue as to whether Defendants "intentionally or recklessly" caused Plaintiff severe emotional distress.  In fact, the record is completely devoid of any evidence suggesting that Defendants acted in such an "intentional" or "reckless" manner.  Without any such evidence, Plaintiff's claim for intentional infliction of emotional distress must fail.

## VIII. Negligent Hiring, Supervision, & Retention Claim

Employers may be held liable for negligence in hiring, supervising, or retaining an employee. *See N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999).  The claim is based on an employee's harm to a third party through employment.  *Id.*  "An employer is found liable, if—at the critical time of the tortious incident—the employer had reason to believe that the person would create an undue risk of harm to others."  *Id.*; *see Escue v. N. Okla. Coll.,* 450 F.3d 1146, 1156 (10th Cir. 2006).  The critical element for recovery under such a claim is "the employer's prior knowledge of the [employee's] propensities to create the specific danger resulting in damage."  *N.H.*, 998 P.2d at 600.[6]

---

[6]  *N.H.* involved a church employee's harm to third parties, specifically, sexual abuse of minor children.  It is unclear whether the Oklahoma Supreme Court would extend the *N.H.* negligent supervision and retention tort to non-physical harm by one employee to another.  *See*

In support of this claim, Plaintiff argues that the City of Tulsa should be held liable for certain actions taken by Defendants in conjunction with the Property Room investigation.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 23-25.)  As discussed in Sections III and IV, the Court finds Defendants are entitled to summary judgment on Plaintiff's malicious prosecution and abuse of process claims—claims which are based on the same allegations as Plaintiff's negligent hiring, supervision, and retention claim.  Hence, the Court has found that Plaintiff was not the victim of any tortious incident based on the facts alleged herein.  In any event, there is insufficient evidence in the record to show that the City of Tulsa had any reason to believe that Defendants Allen, Stout, or Cellino would create an undue risk of harm to others in conjunction with their efforts in investigating the missing property from the Property Room.  The Court accordingly finds summary judgment proper as to Plaintiff's claim for negligent hiring, supervision, and retention.

## IX.    Tortious Interference with Employment Claim

In order to succeed on her claim for tortious interference with employment, plaintiff must demonstrate (1) she had a contractual right which was interfered with; (2) the interference was wrongful and malicious; (3) the interference was neither justified, privileged, nor excusable; and (4) damages were proximately sustained as a result of the interference.  *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1453 (10th Cir. 1997) (citing *Johnson v. Nasca*, 802 P.2d 1294, 1297 (Okla. Ct. App. 1990)).  As noted by Defendants, "an agent of a principal cannot be held liable for interfering with a contract between the principal and a third party."  *See, e.g., Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998).  However, an exception to this general rule exists when "an employee acts in bad faith

_____

*also Jackson v. Remington Park, Inc*., 874 P.2d 814 (Okla. Ct. App. 1994) (racetrack sued for negligent hiring, supervision, and retention after employee assaulted visitor).

19

and contrary to the interests of the employer in tampering with the third party's contract." *Id.*  In

such a situation, the Oklahoma Supreme Court has held that it "can divine no reason that the

employee should be exempt from a tort claim for interference with contract." *Id.* at 897.

Accordingly, in order to prove that Defendants are liable for tortious interference with Plaintiff's

employment, Plaintiff must demonstrate that Defendants acted in "bad faith and contrary to the

interests of the employer." *Id.*

In support of this claim, Plaintiff once again provides little evidence for the Court to review.

In fact, the only facts alleged in support of her tortious interference with employment claim are

found in Plaintiff's Response Brief to Defendants' Reply Brief.  Therein, Plaintiff cites to the

testimony of Defendant Cellino and Dennis MacDonnell,[7] wherein Cellino and MacDonnell make

statements confirming that the investigation and resulting embezzlement charge negatively affected

Plaintiff's career.  (Pl.'s Resp. to Defs.' Reply Br. on Defs'. Mot. for Summ. J. at 8.)  Although it

is certain that such a negative effect resulted from the Property Room investigation, the simple fact

that Plaintiff's employment was so effected is not sufficient to withstand Defendants' Motion for

Summary Judgment.

Upon review of the record, the Court finds no evidence demonstrating that Defendants acted

in "bad faith" and "contrary to the interests" of the Police Department or City of Tulsa in interfering

with Plaintiff's employment.  Any harm to Plaintiff's employment with the City of Tulsa was instead

the result of Defendants' legitimate investigation into the missing property from the Property Room,

and was not the result of any bad faith or malicious interference by Defendants.  Absent any

---

[7] Dennis MacDonnell was a captain of the Tulsa Police Department during the
investigation of the Property Room and directly supervised Defendants Stout and Cellino.

evidence in the record demonstrating that Defendants acted in "bad faith and contrary to the interests of [Plaintiff's] employer," Plaintiff's claim for tortious interference with her employment cannot survive. *Martin*, 975 P.2d at 896.

## X.   Intentional Misconduct Causing Harm Claim

Count VII of Plaintiff's Amended Complaint alleges Intentional Misconduct Causing Harm. (Am. Compl. ¶ 37.) In support of this claim, Plaintiff offers two sentences of argument: "Defendants intentionally fabricated inculpating evidence, falsified misleading evidence, concealed, manipulated, mis-characterized and misrepresented exculpating evidence concerning Cowdrey. Further, Defendant's [sic] actions harmed Cowdrey causing her emotional distress with physical manifestations, loss of her job, shame, humiliation, injury to her reputation, etc." (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 23.)

The Court agrees with Defendants that Plaintiff's claim for intentional misconduct causing harm is "merely a repetition of her other claims." (Def.'s Mot. for Summ. J. at 10.) Specifically, Plaintiff's allegations supporting her claim for intentional misconduct causing harm are the precise allegations she raises in support of her malicious prosecution and intentional infliction of emotional distress claims. Accordingly, the Court incorporates its previous findings and concludes that Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see* Sections III and VII *supra.*

**XI.**     **Conclusion**

It is the order of the Court that Defendants' Motion for Summary Judgment (Dkt. No.

25) is hereby GRANTED.

**ORDERED this 7th day of November, 2006.**

**TERENCE KERN**
**United States District Judge**